2010 Ark. 115

Mary CLARK, Appellant,

v.

JOHNSON REGIONAL MEDICAL CENTER; Orthopaedics, P.A. d/b/a River Valley Musculoskeletal Center; Jennifer Davenport; Stacey Wheatley; Karen Jack; Sparks Medical Center; Dr. Arthur Johnson; Dr. Boyce West; Dr. Robert Noonan; And John Doe #1; John Doe Insurance Company; Jane Doe #1; Jane Doe #2; And Jane Doe #3, Appellees.

No. 09–431.

Supreme Court of Arkansas.

March 11, 2010.

Odom Law Firm, P.A., by: Bobby Lee Odom, Fayetteville, Russell B. Winburn, and Matthew L. Lindsay, and Cullen & Co., PLLC, by: Tim Cullen and Tasha Taylor, Little Rock, for appellant.

Friday, Eldridge & Clark, LLP, by: Jason B. Hendren, Rogers, for appellee Johnson Regional Medical Center.

Cox, Cox & Estes, PLLC, by: Walter B. Cox, Little Rock, for appellee Dr. Boyce West.

Anderson, Murphy & Hopkins, L.L.P., by: Miriam T. Hopkins and Brett D. Watson, Little Rock, for appellee Dr. Robert Noonan.

Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, Greenbrier, amicus curiae Arkansas Trial Lawyers Association.

DONALD L. CORBIN, Justice.

Appellant Mary Clark appeals the order of the Sebastian County Circuit Court dismissing her medical-malpractice claim against Appellees Johnson Regional Medical Center ("JRMC"), Dr. Boyce West, and Dr. Robert Noonan for lack of proper venue pursuant to Ark. R. Civ. P. 12(b)(3) (2009). On appeal, Clark argues that the circuit court erred by dismissing her complaint based on an erroneous interpretation and application of Ark.Code Ann. § 16–55–213(e) (Repl.2005). Clark argues in the alternative that section 16–55–213(e) is unconstitutional as it violates the separation-of-powers clause found in article 4, section 2 of the Arkansas Constitution. As this appeal involves issues of statutory interpretation and a challenge to the constitutionality of a statute, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1) and (b)(6). We affirm.

On February 3, 2006, Clark was admitted to Sparks Medical Center for the purpose of undergoing back surgery that required the implantation of certain hardware into her back. Dr. Arthur Johnson was the surgeon who performed this procedure. During the surgery, Clark suffered a dural tear or durotomy to her left side. Her surgical wound subsequently became infected. Clark was discharged on February 24, 2006, but continued to see Dr. Johnson through his clinic, Orthopaedics, P.A. d/b/a River Valley Musculoskeletal Center. Clark then began to undergo physical therapy for her wound at Appellee JRMC. After notifying staff

there that her wound was not healing properly, a culture of the wound was ordered on March 8, 2006. This culture indicated the presence of Staphylococcus epidermidis (staph infection).

On August 16, 2006, Clark presented at the emergency room at JRMC complaining of weakness and nausea. This was the first in a series of visits to the emergency room there where she was seen and released by Appellees Dr. Boyce West and Dr. Robert Noonan. Then, on December 1, 2006, she returned to the emergency room with a fever and was examined by Dr. John Dunham, who found that her surgical wound had begun to bulge and was draining. He released her with instructions for her to follow up with Dr. Johnson on December 5, 2006. The next day, however, Clark returned to the emergency room, and Dr. Dunham discovered Clark's wound was severely abscessed. She was transferred to Sparks Medical Center. Ultimately, it was discovered that the infection in the wound had spread to the hardware placed in Clark's back, requiring the hardware to be removed.

Clark filed a complaint for medical malpractice on November 26, 2007, in Sebastian County Circuit Court.[1] Clark alleged that the medical negligence on the part of Dr. Johnson, Orthopaedics, P.A., River Valley Musculoskeletal Center, and Sparks Medical Center occurred in Sebastian County and was the proximate cause of her injuries. Further, Clark asserted that medical negligence on the part of JRMC, Dr. Boyce West, and Dr. Robert Noonan

occurred in Johnson County and was the proximate cause of her injuries. More specifically, she alleged that the treating physicians and staff of the two medical centers failed to properly examine and treat her wound and, as a proximate result of their negligence, she incurred permanent injury, scarring, disfigurement, and the loss of enjoyment of life. She further alleged that employees of Sparks Medical Center failed to properly treat her wound and also failed to properly sterilize surgical equipment.[2]

Each of the Appellees filed motions to dismiss arguing, among other grounds for dismissal, that venue was improper pursuant to Rule 12(b)(3). In their motions to dismiss, Appellees argued that venue was proper in Johnson County, pursuant to section 16–55–213(e). Clark responded to the motions to dismiss, arguing that section 16–55–213(e) was not the applicable venue provision; rather, venue was controlled by section 16–55–213(a), or, alternatively, that section 16–55–213(e) was unconstitutional.

Two hearings were held on the motions to dismiss, one on May 16, 2008, and a telephone hearing on October 29, 2008. At the first hearing, Appellees argued that dismissal was warranted pursuant to Rule 12(b)(3) and also under Rule 12(b)(8) because there was a pending lawsuit between the same parties in Johnson County and that the Johnson County suit was filed first. Clark argued that section 16–55–213(e), if found to be applicable, was unconstitutional because it conflicted with

---

1. Earlier that same day, Clark filed the exact same lawsuit in Johnson County Circuit Court. The appellees in that action sought dismissal of the claims against them, arguing that venue as to them was proper in Sebastian County. The motions to dismiss were granted and are the subject of the appeal in the companion case handed down this date. *Clark v. Johnson,* 2010 Ark. 114, 2010 WL 845196.

2. Clark subsequently amended her complaint to add as defendants Karen Jack, Stacey Wheatley, and Jennifer Davenport, nurses at Sparks Medical Center at the time of Clark's surgery, as well as John and Jane Does.

certain Arkansas Rules of Civil Procedure, specifically Rules 13, 19, and 20. According to Clark, although the legislature is vested with the authority to establish venue, where, as here, that venue statute conflicts with procedural rules, it is a violation of the doctrine of separation of powers.

The circuit court subsequently entered an order dismissing Appellees with prejudice after determining that section 16–55–213(e) required Clark to bring her action against each of those defendants in Johnson County. The circuit court included a certificate consistent with the requirements of Ark. R. Civ. P. 54(b). This appeal followed.

■ As her first argument on appeal, Clark asserts that the circuit court erred in dismissing Appellees based on an erroneous application and interpretation of the venue statute, specifically section 16–55–213(e). Clark asserts that the circuit court applied an inappropriate |₅venue statute to this case.[3] Appellees counter that section 16–55–213(e) is the only venue statute applicable to an action for medical malpractice and, thus, the circuit court properly granted their motions to dismiss.

■ This court reviews issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95; *Osborn v. Bryant,* 2009 Ark. 358, 324 S.W.3d 687. Our rules of statutory construction are well settled:

> The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used.

In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.

*Dachs,* 2009 Ark. 542, at 7–8, 354 S.W.3d at 100 (quoting *City of Little Rock v. Rhee,* 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009)). Moreover, the General Assembly is vested with the power to establish venue under the Arkansas Constitution. Ark. Const. amend. 80, § 10; *see also Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Gadbury–Swift,* 2010 Ark. 6, 362 S.W.3d 291. It is this court's fundamental duty, as well as a basic rule of statutory construction, to give |₆effect to the legislative purpose set by the venue statutes. *See Dotson v. City of Lowell,* 375 Ark. 89, 289 S.W.3d 55 (2008); *Quinney v. Pittman,* 320 Ark. 177, 895 S.W.2d 538 (1995).

■ Since 1838, the General Assembly has provided that, in the absence of a statutory exception, the basic rule of venue is that a defendant must be sued in the county where he or she resides or is summoned. *Dotson,* 375 Ark. 89, 289 S.W.3d 55. In 2003, the General Assembly enacted Act 649, the "Civil Justice Reform Act of 2003" ("CJRA"), which primarily focused on tort reform; however, Act 649 also included certain venue provisions, including the one at issue here. Specifically, section 16–55–213 provides in relevant part:

> (a) All civil actions other than those mentioned in §§ 16–60–101–16–60–103, 16–60–107, 16–60–114, and 16–60–115, and subsection (e) of this section must

---

**3.** The Arkansas Trial Lawyers Association ("ATLA") was allowed to file an amicus brief in support of the position advanced by Clark. ATLA argues that section 16–55–213(e) is not applicable to a case such as Clark's where there are multiple acts of negligence alleged against multiple providers in multiple counties.

be brought in any of the following counties:

(1) The county in which a substantial part of the events or omissions giving rise to the claim occurred;

(2)(A) The county in which an individual defendant resided.

(B) If the defendant is an entity other than an individual, the county where the entity had its principal office in this state at the time of the accrual of the cause of action; or

(3)(A) The county in which the plaintiff resided.

(B) If the plaintiff is an entity other than an individual, the county where the plaintiff had its principal office in this state at the time of the accrual of the cause of action.

. . . .

(e) Any action for medical injury brought under § 16–114–201 et seq. against a medical care provider, as defined in § 16–114–201(2), shall be filed in the county in which the alleged act or omission occurred.

According to Clark, subsection (e) applies only in those instances where there is a medical injury that occurred in a single county and involved a single medical care provider. In advancing this argument, Clark points to the language of subsection (e) that an action against "a" medical care provider shall be filed in "the" county where the alleged "act or omission" occurred. Thus, according to Clark, the plain language of section 16–55–213(e) evidences that this provision was intended to

fix venue only in those medical-negligence cases brought against an individual medical care provider and involving a single county. Clark asserts that in a case such as the present one, where there is an alleged continuing course of conduct against multiple providers in more than one county, section 16–55–213(a), the general venue provision, is controlling.[4] This argument is unavailing.

First, the plain language of section 16–55–213(e) supports a conclusion that it is the applicable venue statute in this case. It specifically provides that it applies to *any* action for medical injury, not some actions for medical injury. There is simply nothing in this language to indicate that the legislature intended to limit it in the fashion that Clark advances. Moreover, subsection (a) specifically excludes from its reach medical malpractice actions subject to subsection (e).

■ Second, we agree with Appellees that were we to give Clark's suggested interpretation to this statute, i.e., find that the use of the single article "a" and the singularity of other key words indicates that the statute is limited solely to cases against only one medical provider that occurred in only one county, it would call into question many other statutory provisions within the Medical Malpractice Act that also are drafted in the singular context. That Act defines an action for "medical injury" as any action against "a" medical care provider. *See* Ark.Code Ann. § 16–114–201(1) (Repl.2006). Despite the singularity of terms in section 16–114–201(1), the Act has been applied in cases

---

4. Clark further asserts that Ark.Code Ann. § 16–60–112(a) (Repl.2005), the former venue statute governing personal-injury and wrongful-death cases that this court held in *Wright v. Centerpoint Energy Resources Corp.,* 372 Ark. 330, 276 S.W.3d 253 (2008), was not repealed by the adoption of section 16–55–213(a), may also be harmonized with her interpretation of the appropriate venue statute and could also apply to the facts of this case. This argument was never raised below and, thus, is not preserved for our review as this court will not consider arguments raised for the first time on appeal. *See McWhorter v. McWhorter,* 2009 Ark. 458, 344 S.W.3d 64.

with multiple defendants. *See, e.g., Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005); *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Thus, Clark's suggested interpretation would lead to absurd results, and this court will not engage in statutory interpretations that defy common sense and produce absurd results. *Dachs*, 2009 Ark. 542, 354 S.W.3d 95; *Griffen v. Ark. Judicial Discipline & Disability Comm'n*, 355 Ark. 38, 130 S.W.3d 524 (2003). Although Clark argues that the circuit court's interpretation leads to absurd results, this argument is unavailing. Yes, it may be burdensome to have two different trials in two different counties where there is an alleged course of conduct. It may also not promote judicial economy. These factors, however, do not equate with a conclusion that the circuit court's interpretation leads to absurd results.

Finally, Clark asserts that subsections (a) and (e) must be read harmoniously. To do so, Clark argues that this court must apply subsection (e) to cases for medical injury involving a single provider in a single county and apply subsection (a) to causes for medical injury, personal injury, or wrongful death where the alleged negligence occurred in more than one county and involves multiple caregivers. However, we can harmonize the two subsections without ignoring the plain language of those subsections. Specifically, subsection (a) is the general venue provision that specifically excepts out actions for medical injury, as they are governed by subsection (e)'s venue provision. Accordingly, there is no merit to Clark's argument that a plain reading of the statute demonstrates that section 16–55–213(e) is not applicable to the facts of her case.

■ As her second point on appeal, Clark asserts that if this court finds section 16–55–213(e) to be the applicable venue statute, then it should be declared unconstitutional because it violates the separation-of-powers clause set forth in article 4, section 2 of the Arkansas Constitution. Specifically, she asserts that the statute conflicts with Rules 13, 19, and 20 of our civil practice rules. Moreover, Clark argues that the statute invades this court's constitutional grant of authority to establish the rules of pleading, practice, and procedure set forth in amendment 80, section 3 of the Arkansas Constitution. Appellees counter that the General Assembly has the constitutional "power to establish jurisdiction of all courts and venue of all actions therein." Ark. Const. amend. 80, § 10. In further support of their argument, Appellees point to Ark. R. Civ. P. 82, which provides that the rules of civil procedure "shall not be construed to extend or limit . . . the venue of" the circuit courts.

■ It should be noted at the outset that we review the circuit court's interpretation of the constitution de novo, and though this court is not bound by the circuit court's decision, its interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007); *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality that requires the incompatibility between it and the constitution to be clear before we will hold it unconstitutional. *See, e.g., Cato v. Craighead County Cir. Ct.*, 2009 Ark. 334, 322 S.W.3d 484. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and the heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.* If possible, this court will construe a statute so that it

is constitutional. *See McLane S., Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006).

This court has previously been called upon to determine the constitutionality of the CJRA. In *Summerville*, the appellant challenged the provision of the Act, codified at Ark.Code Ann. § 16–114–209(b) (Repl.2006), that required a party to submit an affidavit of reasonable cause from a medical expert when filing a medical-malpractice action as conflicting with Ark. R. Civ. P. 3 regarding commencement of an action. After we concluded that section 16–114–209(b) was procedural, we examined its asserted conflict with Rule 3. In finding that the statutory provision conflicted with Rule 3, this court relied on our prior decision in *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992), where we held that a statutory provision was superseded because it conflicted with Rule 3. This court concluded that the challenged statute constituted a "legislative encumbrance to commencing a cause of action that is not found in Rule 3 of our civil rules" and was thus unconstitutional as being in conflict with Rule 3 and our court's authority under amendment 80. *Summerville*, 369 Ark. at 239, 253 S.W.3d at 421.

Another provision of the CJRA was challenged in *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135. There, this court was presented with a certified question regarding the validity of Ark.Code Ann. § 16–55–202, the statute governing nonparty fault. Petitioners argued that that provision was unconstitutional because, among other reasons, it violated the separation-of-powers clause found in article 4, section 2 of the Arkansas Constitution. This court struck down section 16–55–202 as unconstitutional, stating

the nonparty-fault provision in the instant case conflicts with our "rules of pleading, practice and procedure." While respondents assert the nonparty-fault provision should be upheld because it does not directly conflict with our rules of procedure as the legislative requirements did in *Summerville* and *Weidrick*, we take this opportunity to note that so long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional. This is because rules regarding pleading, practice, and procedure are solely the responsibility of this court. *See* Ark. Const. amend. 80, § 3.

*Johnson*, 2009 Ark. 241, at 7, 308 S.W.3d at 141. The court further held that the statute's requirement of filing a pleading conflicted with Ark. R. Civ. P. 7 regarding when pleadings are allowed.

Clark points to these prior cases striking down parts of the CJRA as support for her contention that section 16–55–213(e) is unconstitutional. According to Clark, the provision prohibits a plaintiff from joining all defendants in a single suit as allowed under Rule 20. Moreover, Clark argues that the statute prohibits the trial court from joining necessary parties as allowed under Rule 19, and that all cross-claims and counterclaims may not be brought as required under Rule 13. Thus, according to Clark, the venue statute is procedural, just as those provisions in *Summerville* and *Johnson* were procedural, and because the statute conflicts with this court's procedural rules, it should be declared unconstitutional.

The problem with Clark's argument in this regard is that she fails to recognize a critical distinction in the present case, namely that it is well established that venue is a matter that lies within the province of the General Assembly, a fact recognized

by this court in *Gadbury–Swift*, 2010 Ark. 6, 362 S.W.3d 291, and *Dotson*, 375 Ark. 89, 289 S.W.3d 55. Moreover, in the Reporter's Note to Rule 82, it states that the rules of civil procedure "are intended to be procedural only and do not affect any substantive issues such as venue and jurisdiction." Those cases such as *Summerville* and *Johnson* where we have struck down provisions of the CJRA involved attempts by the General Assembly to legislate procedural issues that were within this court's domain. Here, the legislature has codified a statute establishing venue, a matter that is clearly within its domain. Clark's argument that the venue provision of section 16–55–213(e) is procedural and conflicts with rules of civil procedure, therefore rendering it unconstitutional, is without merit.

Affirmed.

DANIELSON and WILLS, JJ., concur.

DANIELSON, J., concurring.

I agree with Clark that section 16–55–213(e) potentially conflicts with certain rules of civil procedure; however, I agree with the majority that the matter of venue clearly lies within the province of the General Assembly. I write solely to address two matters. First, I encourage the General Assembly to reexamine this provision in light of our procedural rules and to consider the potential problems it poses with respect to judicial economy and efficiency. Further, I question the legitimacy or constitutionality of a statute that carves a special venue provision for a singular group, here the medical industry. For these reasons, I concur.

WILLS, J., concurring.

I agree with the majority's conclusion that Arkansas Code Annotated section 16–55–213(e) is the applicable venue provision in this case. I also agree that section 16–55–213(e) is constitutional under the separation-of-powers doctrine. I write separately because, in my view, it is not necessary to look beyond the provisions of our constitution to reach this conclusion.

The majority correctly concludes that Arkansas Code Annotated section 16–55–213(e) (Repl.2005) is constitutional because "venue is a matter that lies within the province of the General Assembly." The majority also mentions, however, that "in the Reporter's Note to Rule 82, it states that the rules of civil procedure 'are intended to be procedural only and do not affect any substantive issues such as venue and jurisdiction.'" I believe it is unnecessary to look beyond the language of the Arkansas Constitution to determine the constitutionality of the statute.

The majority properly begins its analysis with the maxim that all statutes are presumed constitutional. I would add to that maxim that

> it must always be remembered that the state's constitution is neither an enabling act nor a grant of enumerated powers, and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations fixed by the constitutions of the United States and this state. *Jones v. Mears*, 256 Ark. 825, 510 S.W.2d 857 [ (1974) ]; *St. L., I.M. & S. Ry. Co v. State*, 99 Ark. 1, 136 S.W. 938 [ (1911) ]. Under our system of government the legislature represents the people and is the reservoir of all power not relinquished to the federal government or prohibited by the state constitution. *Rockefeller v. Hogue*, 244 Ark. 1029, 429 S.W.2d 85 [ (1968) ]; *Hackler v. Baker*, 233 Ark. 690, 346 S.W.2d 677 [ (1961) ].

*Wells v. Purcell*, 267 Ark. 456, 464, 592 S.W.2d 100, 105 (1979); *see also Rockefeller v. Hogue*, 244 Ark. at 1041, 429 S.W.2d at 92 ("There can be no doubt that the

legislative branch may implement any constitutional provision by legislation which is not inconsistent therewith or repugnant thereto, so long as the legislation does not invade specific powers delegated to one of the other branches or exceed specific constitutional limitations.").

The appellant invokes the separation-of-powers doctrine as a basis for reversing the circuit court and also alleges that the statute "invades the Arkansas Supreme Court's constitutional grant of authority to establish the rules of pleading, practice and procedure pursuant to amendment 80, section 3." The "separation of powers doctrine" is embodied in the provisions of Arkansas Constitution, article 4, sections 1 and 2:

> The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another.

> No person or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in instances hereinafter expressly directed or permitted.

Under this doctrine, the General Assembly may not "exercise any power belonging to" the judicial department. Our constitution, however, clearly vests the power to establish venue with the legislative branch. Ark. Const. amend. 80, § 10 ("The General Assembly *shall have the power to establish* jurisdiction of all courts and *venue* of all actions therein, unless otherwise provided in this Constitution . . . .") (emphasis added). The power to establish venue thus "belongs" to the legislative department. The statute at issue in this case, Arkansas Code Annotated section 16–55–213(e), is clearly a venue statute, and as such is

unquestionably within the powers of the legislative department under our Constitution. It is thus unnecessary, in my view, to refer to the provisions of our rules on the topic. It is immaterial in this case whether our rules declare venue to be procedural or substantive, or to what degree we have adopted rules on the topic, because either way, section 16–55–213(e) is a venue statute for purposes of amendment 80, section 10 and within the power of the General Assembly.

The majority traces our recent decisions in the area, stating that in *Weidrick v. Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992), "we held that a statute was unconstitutional as it conflicted with our rules of procedure," and that in *Summerville v. Thrower,* 369 Ark. 231, 253 S.W.3d 415 (2007), we held the statute at issue there "unconstitutional as being in conflict with Rule 3 and our court's authority under Amendment 80."

In *Weidrick v. Arnold, supra,* a pre-amendment–80 case, this court considered whether Rule 3 of our Rules of Civil Procedure regarding the commencement of civil actions superseded the statutory provision found in Arkansas Code Annotated section 16–114–201 (1987 & Supp.2001). That statute required a plaintiff in a medical-malpractice case to serve the defendant with a notice of intent to sue sixty days prior to filing the complaint. The *Weidrick* court held that the statute directly conflicted with Rule 3 and was thus *superseded* by the rule. *Weidrick,* 310 Ark. at 146, 835 S.W.2d at 848–49. The court did not, however, hold that section 16–114–201 was "unconstitutional," as the majority suggests. The *Weidrick* court viewed the matter more as one of supersession. This was entirely appropriate at a time when this court's authority to make rules of procedure was only "inherent" or "implied" and was shared with the General

Assembly. *See State v. Lester,* 343 Ark. 662, 38 S.W.3d 313 (2001) (quoting *Jackson v. Ozment,* 283 Ark. 100, 671 S.W.2d 736 (1984), *overruled on other grounds by Weidrick v. Arnold, supra,* for the proposition that "Article 7, sections 1 and 4 'do not expressly or by implication confer on this Court exclusive authority to set rules of court Procedure'" and "this court shares that authority with the General Assembly"). *See also* Acts 1973, No. 38; *Re Rules of Civil Procedure,* 264 Ark. App'x 963 (1978) (per curiam); Acts 1971, No. 470; *In re Arkansas Criminal Code Revision Comm'n,* 259 Ark. 863, 530 S.W.2d 672 (1975) (per curiam).

Later, in *Summerville v. Thrower, supra,* a post–amendment–80 case, this court *was* confronted with the constitutionality of another portion of the medical-malpractice statutes, Arkansas Code Annotated section 16–114–209(b). That statute required a plaintiff to submit an affidavit of reasonable cause from a medical expert when filing a medical-malpractice action. There, the court first found that section 16–114–209(b) was procedural, and then considered whether the statute conflicted with Rule 3. Because the statute contained a procedural requirement that was not found in Rule 3, this court found the statute to be "constitutional[ly] infirm[ ]" and struck that provision "as directly in conflict with Rule 3 of our Civil Rules of Procedure and this court's authority under Amendment 80 of the Arkansas Constitution." *Summerville,* 369 Ark. at 239, 253 S.W.3d at 421. In *Summerville,* the issue was not one involving supersession, where both branches shared power over procedural rules, but was one of constitutional dimension. The passage of amendment 80, including amendment 80, section 3, transformed the inquiry from one of supersession to one involving the separation-of-powers doctrine.

Although we did not mention the separation-of-powers doctrine in *Summerville,* it is clear to me that the decision was based upon that underlying principle. Acts of the General Assembly are not unconstitutional because they conflict with a rule promulgated by this court. Instead, acts of the General Assembly are unconstitutional when they transgress a provision of the Arkansas or United States Constitution. *Wells v. Purcell, supra.* Although the court in *Summerville* held section 16–114–209(b) unconstitutional under amendment 80, section 3, in my view, that provision is not itself a prohibition against the exercise of power by the General Assembly. It simply invests this court with a power—in fact, a duty—to "prescribe the rules of pleading, practice and procedure for all courts." It carves out and reserves to the judicial branch a power—the power to prescribe rules of pleading, practice, and procedure—that may not be invaded by the other departments of government by virtue of article 4, sections 1 and 2. Thus, after the adoption of amendment 80, the question in cases such as this is no longer to what degree a statute conflicts with our rules, but in which department the organic law *confides·* the power for purposes of article 4, sections 1 and 2 and whether a branch other than that to which it is confided has attempted to exercise it.

Our most recent decision in this area, *Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, 308 S.W.3d 135, reflects this principle. Although our earlier decision in *Summerville v. Thrower, supra,* focused at least to some degree on whether the applicable statute directly conflicted with our rules, we stated in *Johnson* that, "so long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional. This is because rules regarding pleading, practice, and procedure are solely the responsibility of this court."

*Johnson,* 2009 Ark. 241, at 7, 308 S.W.3d at 141; *see also Cato v. Craighead Cnty. Circuit Court,* 2009 Ark. 334, 322 S.W.3d 484 ("Under our holding in |₁₉*Johnson,* the only question that need be asked is whether the challenged legislation dictates procedure. If the legislation bypasses our rules of pleading, practice, and procedure by setting up a procedure of its own, then it violates the separation-of-powers doctrine.").

Likewise, in this case, the power to establish *venue* is solely the responsibility of the General Assembly. Ark. Const. amend. 80, § 10. As a consequence, the only question that need be asked in this case is whether section 16–55–213(e) dictates venue. The scope of our rules or the extent of the statute's conflict with our rules is irrelevant in this case. I therefore concur in the majority's opinion on this point.