2011 Ark. 277

April FORRESTER, Individually and as
a Representative of All Similarly Situ-
ated Voter–Citizens of Arkansas, Ap-
pellant

v.

Mark MARTIN, Secretary of State
of Arkansas, In his Official
Capacity Only, Appellee.

Randy Zook, Randy Wilbourn, Ray C.
Dillon, David Byerly, Don Zimmer-
man, and Mark McBryde, Individually
and on Behalf of the Committee for
Arkansas's Future, Intervenors.

No. 11–112.

Supreme Court of Arkansas.

June 23, 2011.

Deininger, Wingfield & Corry, P.A., by: Neil Deininger, Reba M. Wingfield, and Amy G. Hall; and Hatfield & Sayre, by: Eugene G. Sayre and Christopher D. Brockett, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Scott P. Richardson, Ass't Att'y Gen., and Colin R. Jorgensen, Ass't Att'y Gen., for appellee.

Friday, Eldredge & Clark, by: Elizabeth Robben Murray, Little Rock, for intervenor appellees.

JIM HANNAH, Chief Justice.

April Forrester, individually and as a representative of all similarly situated voter-citizens, appeals from a November 2, 2010 order entered in Pulaski County Circuit Court denying Forrester's request for injunctive relief and writ of mandamus against the Arkansas Secretary of State regarding proposed constitutional amendment designated "Issue No. 2," now codified as amendment 89. On appeal, Forrester asserts that the circuit court erred

because amendment 89 violated Arkansas Constitution, article 19, section 22 in that it actually included three separate constitutional amendments instead of the permitted one amendment. Forrester further asserts that the circuit court erred in failing to find that the Secretary of State perpetrated a manifest fraud on the voters in the wording on the ballot title by failing to meet the requirements of Arkansas Code Annotated section 7–9–204 (Repl. 2007). We affirm the decision of the circuit court. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1),(4), and (5).

This case concerns three separate proposed amendments to the Arkansas Constitution submitted by the General Assembly to the public for adoption in the general election of November 2, 2010. Amendment 89 concerns public and private debt obligations, as well as issuance of energy efficiency bonds.[1]

At issue is whether amendment 89 violates article 19, section 22 of the Arkansas Constitution. We review the circuit court's interpretation of the constitution de novo, and while this court is not bound by the circuit court's decision, its interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Clark v. Johnson Reg'l Med. Ctr.*, 2010 Ark. 115, at 10, 362 S.W.3d 311, 316. Further, we are asked to interpret Arkansas Code Annotated section 7–9–204. This court reviews issues of statutory interpretation de novo because it

---

**1.** On September 24, 2010, Forrester filed this action in the circuit court and at the same time filed an action in this court asserting the right to do so under this court's original jurisdiction. However, this court held that its jurisdiction in this case was appellate, not original, and we dismissed the action filed under original jurisdiction in this court on October 22, 2010. *See Forrester v. Daniels,* 2010 Ark. 397, 373 S.W.3d 871 (*Forrester I* ).

The circuit court stayed this present action pending the outcome in *Forrester I*. After *Forrester I* was decided, this case was submitted to the court on briefs filed October 28–29, 2010. Oral argument was held on November 1, 2010. The requests for injunctive relief and writ of mandamus were denied on November 2, 1010. The election was held this same date, and the voters adopted amendment 89. This appeal followed.

is for this court to determine the meaning of a statute. *Clark*, at 5, 362 S.W.3d at 314 (quoting *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95). The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.*, 362 S.W.3d at 314. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.*, 362 S.W.3d at 314. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 362 S.W.3d at 314. No word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*, 362 S.W.3d at 314.

In this case, Forrester argues that the constitutional requirements for submission of an amendment to the electors have not been fulfilled. Where those requirements have been fulfilled, and the amendment is submitted to the electors, and that amendment is adopted, every reasonable presumption, both of law and fact, will be indulged in favor of its validity. *See Chaney v. Bryant*, 259 Ark. 294, 298, 532 S.W.2d 741, 744 (1976). Where the compliance with constitutional requirements are not met, the courts may hold that the amendment was not properly adopted, despite a favorable vote at a general election. *Id.*, 532 S.W.2d at 744.

We first consider Forrester's assertion that the circuit court erred in failing to find that the ballot title constituted a manifest fraud on the electors. On this issue, the circuit court found as follows:

> In the instant case, the Court finds that the ballot title of Issue No. 2 does not constitute a manifest fraud upon the public. The ballot title states the amendment's purposes. It states that the amendment establishes the maximum lawful rate of interest on loans and contracts at seventeen (17%) per annum. Further, it states that the amendment repeals Article 19, § 13 of the Arkansas Constitution and the interest rate provisions of various other amendments to the Arkansas Constitution. The ballot title is complete enough to convey an intelligible idea of the scope and import of the proposed amendment. The ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. Therefore, the omissions of which the Plaintiff complains do not constitute a manifest fraud upon the public.

In *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000), this court upheld a ballot title even though the ballot title omitted information that would cause voters to pause or be given serious ground for reflection. *Thiel*, 342 Ark. at 298, 28 S.W.3d at 299. Although the ballot title had "serious omissions," the plaintiff failed to overcome the "enormous hurdle" of the manifest-fraud standard. *Thiel*, 342 Ark. at 296, 28 S.W.3d at 298. In *Becker v. McCuen*, 303 Ark. 482, 484–85, 798 S.W.2d 71, 74 (1990), this court stated that amendments submitted to the public by the General Assembly are controlled by article 19, section 22:

> In Arkansas there are two different ways for a constitutional amendment to be proposed to the public. The two courses employ different procedures and have different legal requirements. *Chaney v. Bryant*, 259 Ark. 294, 532 S.W.2d 741 (1976). The first way, which has been available through all five of our constitutions, is through the General Assembly. The requirements of that method are set out in Ark. Const. art. 19, § 22. The second way, adopted in 1920, is through the initiative and referendum power reserved to the people. The requirements of the second way are

set out in Amendment 7. The provisions of Amendment 7 do not govern constitutional amendments proposed by the General Assembly. *Berry v. Hall,* 232 Ark. 648, 339 S.W.2d 433 (1960). This case involves an amendment proposed by the General Assembly and, accordingly, is governed by Ark. Const. art. 19, § 22. In such cases our jurisdiction is appellate only.

Article 19, section 22 provides as follows:

Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution; and, if the same be agreed to by a majority of all members elected to each house, such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State, for approval or rejection; and if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this Constitution. But no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately.

Article 19, section 22 does not require a ballot title, and any ballot title offered is intended to identify and distinguish the amendment rather than to inform the voter. *Becker v. Riviere,* 277 Ark. 252, 254–55, 641 S.W.2d 2, 4 (1982). Where the purpose is only to identify, a ballot title is sufficient "if it distinguishes the proposed amendment from others and is recognizable as referring to the amendment that was previously published in the newspapers." *Becker,* 277 Ark. at 255, 641

S.W.2d at 4. Further, "[a] ballot that meets this test will be upheld unless it is worded in some way so as to constitute a manifest fraud upon the public." *Id.,* 641 S.W.2d at 4. This court discussed manifest fraud in *Thiel:*

[O]ur court has defined fraud as meaning (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient information upon which to make the representation; (3) intent to induce action or inaction on the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *See McAdams v. Ellington,* 333 Ark. 362, 970 S.W.2d 203 (1998). Moreover, Thiel offers *Black's Law Dictionary's* (6th ed.1990) definition of the term "manifest" to mean something that is "evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, that which is clear and requires no proof; that which is notorious."

*Thiel,* 342 Ark. at 296, 28 S.W.3d at 298. To be manifest fraud, the fraud must be open and obvious. Nothing was offered in the present case to show that there was an open and obvious fraud committed by the ballot title.

■ Forrester also argues that pursuant to Arkansas Code Annotated section 7–9–204, the only ballot title that could be used was the title of the joint resolution, which was "Proposing an Amendment to the Constitution Concerning the Interest Rate Limits." Section 7–9–204 was enacted in act 150 of 2001 and provides that "[t]he title of the joint resolution proposing an amendment to the Arkansas Constitu-

tion shall be the ballot title of the proposed constitutional amendment." However, Forrester's argument fails because the ballot title complied with article 19, section 22 in that it identified and distinguished the amendment and it was not worded in some way as to constitute a manifest fraud upon the public. *See Becker,* 277 Ark. at 254–55, 641 S.W.2d at 4. In this case, section 7–9–204, being at variance with article 19, section 22, violates the Arkansas Constitution. *See Handy Dan Improvement Ctr., Inc. v. Adams,* 276 Ark. 268, 270, 633 S.W.2d 699, 700 (1982).

■ The second issue is whether amendment 89 violated Arkansas Constitution, article 19, section 22 because it included three separate constitutional amendments when only one is permitted. Amendment 89 provides in pertinent part as follows:

(1)(c) Except as may be established by the General Assembly pursuant to Section 8 of this amendment, there shall be no maximum lawful rate on bonds issued by and loans made by or to governmental units.

. . . .

(2) The maximum lawful rate of interest, discount points, finance charges, or other similar charges that may be charged, taken, received, or reserved from time to time in any loan or financing transaction by or to any federally insured depository institution having its main office in this State shall be the maximum rate of interest that was applicable to federally insured depository institutions under 12 U.S.C. § 1831u effective on March 1, 2009.

. . . .

(3) The maximum lawful rate of interest on loans or contracts not described in Sections 1 and 2 shall not exceed seventeen percent (17%) per annum.

. . . .

(4)(a) A governmental unit, under laws adopted by the General Assembly, may issue bonds to finance all or a portion of the costs of energy efficiency projects. The bonds may bear such terms, be issued in such manner, and be subject to such conditions as may be authorized by the General Assembly. The bonds authorized by Section 4 shall be governmental bonds subject to the provisions of Section 1 of this amendment.

(b) Bonds may be secured by a pledge of the savings from the energy efficiency project and may be repaid from general revenues, special revenues, revenues derived from taxes or any other revenues available to the governmental unit.

(c) The authority conferred by this Section 4 shall be supplemental to other constitutional provisions which authorize the issuance of bonds.

Article 19, section 22 provides that while the General Assembly may submit three amendments, "[t]hey shall be so submitted as to enable the electors to vote on each amendment separately." In arguing that amendment 89 complied with article 19, section 22, appellee relies heavily on *Brockelhurst v. State,* 195 Ark. 67, 72–73, 111 S.W.2d 527, 529–30 (1937), where this court stated as follows:

Another contention is made that this amendment was not adopted in compliance with § 22 of art. 19, providing the method for amending the Constitution. The closing sentence in this section and article provides: "They (amendments) shall be so submitted as to enable the electors to vote on each amendment separately." This objection seems to be that the Legislature was without power to submit two questions in one amendment. In the first section of this amendment, it is provided that prosecuting attorneys may file [an] information

or indictments may be had by grand juries, to charge one with crime. It also provides in § 2 for the directing of the General Assembly to determine by law the amount, method and payment of salaries of prosecuting attorneys. We perceive no objection to this manner or method of amending the Constitution, as they both relate to the prosecuting attorney. We are, therefore, of the opinion that appellant is wrong in this contention.

Appellee also cites the court to *Californians for an Open Primary v. McPherson*, 38 Cal.4th 735, 43 Cal.Rptr.3d 315, 134 P.3d 299 (2006) and argues that the requirement should be that an amendment complies with article 19, section 22 when its parts are generally germane to a common theme. With regard to the phrase "generally germane to a common theme," the California Supreme Court held as follows:

[w]e shall adopt the approach that is, and has been, the majority rule in our sister state jurisdictions for approximately 125 years: the separate-vote provision should be construed consistently with its kindred provision, the single subject rule. We already have rejected, in part II.1, the Legislature's argument that the word "amendment" in article XVIII, section 1 ("[e]ach amendment shall be so prepared and submitted that it can be voted on separately") refers to the legislative *vehicle* (the resolution proposing the constitutional amendment) by which the Legislature transmits a proposed amendment to the Secretary of State for eventual submission on the ballot. We shall explain below that the word "amendment" as used in the provision refers to a substantive change or group of substantive changes that are reasonably germane to a common theme, purpose, or subject. If (as in this case) the Legislature proposes to

the electorate in such a resolution that the Constitution should be amended in a manner that presents in a single measure substantive changes that are not reasonably germane to a common theme, purpose, or subject, the presentation of such a single measure to the voters as an amendment will violate the separate-vote provision found in the second sentence of article XVIII, section 1.

*McPherson*, 43 Cal.Rptr.3d 315, 134 P.3d at 317–18. In *Legislature of the State of California v. Eu*, 54 Cal.3d 492, 286 Cal. Rptr. 283, 816 P.2d 1309, 1321 (1991), the court held that an initiative measure does not violate California's single-subject requirement where all of its parts are reasonably germane to each other and to the general purpose or object of the initiative. We agree with the reasoning in *McPherson* and *Eu* and hold that under article 19, section 22, there is no violation of the separate-issue requirement so long as all of the amendment parts are reasonably germane to each other and to the general subject of the amendment.

The general subject of amendment 89 is economic development and debt obligations. Each relevant section of amendment 89 speaks to a form of that general subject. Therefore, each relevant section relates to the general subject of the amendment. Further, each relevant section is reasonably germane to each other. Sections 1, 2, and 3 concern interest paid on debt obligations and economic development. While the discussion of energy efficiency bonds in section 4 also concerns general terms of the issuance of such bonds, it also speaks to the terms that the bonds will bear, and specifically states that the "bonds authorized by Section 4 shall be governmental bonds subject to the provisions of Section 1 of this amendment." Therefore, section 4 relates to sections 1, 2, and 3, as it also defines the interest that

may be paid on that particular debt obligation, and economic development. We, therefore, affirm the decision of the circuit court with respect to both issues raised by Forrester.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting.

I think it is crystal clear that the legislature engaged in the prohibited practice of logrolling when it included section 3, which increases the maximum rate of interest that may be charged on loans and contracts, in what has now been codified as amendment 89 to the Arkansas Constitution. In so doing, the legislature violated the requirement of article 19, section 22, that it not submit more than three amendments at the same time, as well as the requirement that amendments "be so submitted as to enable the electors to vote on each amendment separately." Therefore, I respectfully dissent.

Amendment 89, as submitted and approved, contains multiple sections, each concerning various aspects of economics or lending. First, section 1 lifts the restrictions on interest rates applicable to bonds issued by and loans made by or to governmental entities. Section 2 harmonizes with federal law the current restrictions on loans by federally insured depository institutions. Section 3 establishes the maximum rate of interest on all other loans and contracts at seventeen percent per annum. Section 4 is concerned with bonds for energy-efficiency projects. The State and the Intervenors both argue, in essence, that this was one economic package aimed at removing impediments to economic development. I can agree with this assertion, with one notable exception—section 3. I simply fail to see how raising the maximum cap on interest rates from six percent (6%) per annum to seventeen percent (17%) per annum encourages economic development. Indeed, I think it was a clever, but invalid, attempt to include a less favorable section in the midst of more favorable sections.

This court has addressed a similar issue in only one prior case, *Brockelhurst v. State*, 195 Ark. 67, 111 S.W.2d 527 (1937). There, in the course of his criminal appeal, the appellant argued that amendment 21 was not adopted in compliance with section 19, article 22. Specifically, the appellant asserted that the amendment did not allow electors to vote on each amendment separately because it submitted two questions in one amendment. The amendment at issue in *Brockelhurst* provided that a prosecuting attorney could charge a person with a crime by filing an information in lieu of an indictment by a grand jury. A second provision in the amendment directed the legislature to determine by law the amount, method, and payment of salaries of prosecuting attorneys. This court rejected the appellant's challenge to the amendment on the basis that both sections related to the same subject, namely the prosecuting attorney.

The court in *Brockelhurst* provided little in the way of analysis to support its conclusion. I believe that the decision in *Cottrell v. Faubus*, 233 Ark. 721, 723, 347 S.W.2d 52, 53 (1961), is more instructive. There, this court discussed the single-subject requirement set forth in article 5, section 30, which governs appropriations bills, and explained that the purpose of the single-subject rule was "to prevent the inclusion of separate and unrelated appropriations in a single bill, because that practice opens the door to the evils that have come to be known as logrolling and pork barrel legislation." Granted, article 19, section 22, does not expressly impose a single-subject requirement on amendments, but it does require that the legislature submit

amendments so that voters may cast a vote on each amendment separately. I do not believe the voters of this state were given that option when presented with amendment 89. Moreover, I believe the purpose of the single-vote requirement in article 19, section 22 is essentially the same as that single-subject rule of article 5, section 30; namely, to prevent logrolling.

While our court has never defined "logrolling," the Maryland Court of Appeals explained that it occurs when two or more propositions essentially dissimilar in subject matter are submitted to the electorate in one amendment so that the voter may cast one vote on the measure as a whole. *Andrews v. Governor of Maryland,* 294 Md. 285, 449 A.2d 1144 (1982). As a result, voters are forced to vote for provisions they might not favor in order to secure passage of the provisions that are favored. The practice of logrolling is clearly violative of the requirement that amendments be presented so that they can be voted upon separately by the electors.

I am mindful of the deference generally afforded a constitutional amendment referred by the legislature, especially one that has been approved by a majority of the electorate. In *Chaney v. Bryant,* 259 Ark. 294, 532 S.W.2d 741 (1976), this court held that after a proposed constitutional amendment has been ratified by the people, every reasonable presumption, both of law and fact, will be indulged in favor of its validity. *Id.* First, I question whether such deference is warranted where, as here, we are called upon to review the legitimacy of the process in referring the amendment, as opposed to the substance of the amendment. Regardless, even applying this deferential standard, I still believe that amendment 89 is invalid. It is so patently obvious that this amendment was drafted with the purpose of including the less favorable increase on interest rates with the more favorable bond and lending issues, that there is no reasonable presumption that favors the amendment's validity. Those defending amendment 89 would have us believe that almost tripling the maximum allowable rate of interest on loans and contracts will encourage economic development. The only thing it will encourage is predatory lending practices, which can in actuality stifle economic development.

Second, even though we afford deference to an amendment once it has been approved by the people, it does not mean that we should turn a blind eye to the amendment if it is constitutionally infirm. In fact, just over two months ago, this court held Initiated Act No. 1, codified at Arkansas Code Annotated sections 9-8-301 to -306 (Repl.2009), to be unconstitutional. *Ark. Dep't of Human Servs. v. Cole,* 2011 Ark. 145, 380 S.W.3d 429. In that case, this court found the voter-approved act to be unconstitutional because it burdened the fundamental right to privacy implicit in our constitution. Likewise, the fact that the voters approved amendment 89 does not cure the defect that resulted from the legislature's violation of the requirements found in article 19, section 22.

For the foregoing reasons, I believe section 3 of amendment 89 is not reasonably related to the other provisions of the amendment. While the State asserts that the theme of amendment 89 is "debt instruments," it further argues that the purpose of the amendment is "to make changes to lending and financial transactions intended to further economic development." I reiterate my belief that section 3 in no way furthers economic development and should therefore be held invalid pursuant to the severability clause of section 9 of amendment 89.

Additionally, I disagree with the majority's conclusion that section 7–9–204 is unconstitutional. This court has held that a general statute must yield to a specific statute involving the particular subject matter. *Save Energy Reap Taxes v. Shaw,* 374 Ark. 428, 288 S.W.3d 601 (2008). This same maxim of statutory interpretation applies here. Section 7–9–204 generally requires the secretary of state to use the title of the joint resolution but, here, the legislature in HJR 1004 specifically directed the secretary of state to use another ballot title. Thus, while I agree with the majority's conclusion that Forrester's challenge to the ballot title is without merit, I reach that conclusion based on a different analysis.

Accordingly, I respectfully dissent.