Cite as 2020 Ark. 320

# SUPREME COURT OF ARKANSAS

No. CV-20-546

| | |
|---|---|
| TOM STEELE | **Opinion Delivered:** October 15, 2020 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-20-3653] |
| V. | |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF ARKANSAS | HONORABLE MARY SPENCER MCGOWAN, JUDGE |
| APPELLEE | |
| | <u>AFFIRMED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant Tom Steele appeals an order of the Pulaski County Circuit Court granting a motion to dismiss filed by appellee John Thurston, Secretary of State for the State of Arkansas ("the Secretary"), thereby denying Steele's request to strike two proposed constitutional amendments, Issue 2 and Issue 3, from the general-election ballot on November 3, 2020. For reversal, Steele argues that the circuit court erred in ruling that (1) the ballot titles were sufficient, and (2) Issue 3 did not violate article 19, section 22 of the Arkansas Constitution. We affirm.

## I. *Facts*

In 2019, the Arkansas General Assembly referred three proposed amendments to the Arkansas Constitution to be placed on the general-election ballot on November 3, 2020.

Among those three proposed amendments, the Secretary designated Senate Joint Resolution 15 as Issue 2 and House Joint Resolution 1008 as Issue 3.

The Issue 2 ballot title states,

> A Constitutional Amendment to be known as the "Arkansas Term Limits Amendment"; and amending the term limits applicable to members of the General Assembly.

Its popular name states,

> A Constitutional Amendment to Amend the Term Limits Applicable to Members of the General Assembly, to be Known as the "Arkansas Term Limits Amendment."

The Issue 3 ballot title states,

> An Amendment to the Arkansas Constitution to amend the process for the submission, challenge, and approval of proposed initiated acts, constitutional amendments, and referenda.

Its popular name states,

> A Constitutional Amendment to Amend the Process for the Submission, Challenge, and Approval of Proposed Initiated Acts, Constitutional Amendments, and Referenda.

On June 29, 2020, Steele filed a complaint against the Secretary in his official capacity requesting a writ of mandamus, declaratory judgment, and injunctive relief and seeking to have Issue 2 and Issue 3 removed from the November 3 general-election ballot. He challenged the sufficiency of both ballot titles and alleged that, with the passage of Act 376 of 2019 ("Act 376"), all ballot-title challenges should be evaluated solely under amendment 7 to the Arkansas Constitution. Steele also filed a motion to expedite and a motion for

2

preliminary injunction seeking to enjoin the Secretary from counting, canvassing, and certifying ballots or votes cast for Issue 2 and Issue 3.

The Secretary filed a motion to dismiss requesting that the circuit court dismiss the complaint with prejudice pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to state a claim. The Secretary responded to Steele's motion for preliminary injunction by arguing that Steele could not overcome a threshold question of irreparable harm and that, as a result, the motion must be denied.

On September 9, 2020, the circuit court entered an order granting the Secretary's motion to dismiss the complaint with prejudice, denying Steele's motion for preliminary injunction, and denying Steele's motion for a writ of mandamus or declaratory relief. Specifically, the circuit court ruled, *inter alia*, that "both Issue 2 and Issue 3 comply with the applicable governing procedures of Article 19, [section] 22 of the Arkansas Constitution." Steele timely filed his notice of appeal.

Because this case involves an amendment proposed by the Arkansas General Assembly, our jurisdiction is appellate only. *See Forrester v. Daniels*, 2010 Ark. 397, 373 S.W.3d 871; *Becker v. McCuen*, 303 Ark. 482, 798 S.W.2d 71 (1990); *Berry v. Hall*, 232 Ark. 648, 339 S.W.2d 433 (1960).

## II. *Sufficiency of the Ballot Titles*

Steele argues on appeal that the circuit court erred in ruling that the ballot titles of Issue 2 and Issue 3 were sufficient because, with the passage of Act 376, all ballot titles should

3

now be evaluated under amendment 7—instead of article 19, section 22—of the Arkansas Constitution.

When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Wade v. Ferguson*, 2009 Ark. 618, at 2. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id.* When a complaint is dismissed on a question of law, this court conducts a de novo review. *State v. West*, 2014 Ark. 174; *Fatpipe, Inc. v. State*, 2012 Ark. 248, 410 S.W.3d 574.

Further, we review issues of statutory construction de novo, as it is for this court to interpret a statute. *City of Rockport v. City of Malvern*, 2012 Ark. 445, at 3, 424 S.W.3d 870, 873. This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Weeks v. Thurston*, 2020 Ark. 64, at 5, 594 S.W.3d 23, 25.

A. Constitutional Framework

This court recognized the distinction between constitutional amendments proposed by the Arkansas General Assembly and those initiated by the people in *Coulter v. Dodge*, 197 Ark. 812, 125 S.W.2d 115 (1939). Those two methods are governed by entirely different procedures and requirements. *Id.*, 125 S.W.2d 115. The first method, which has been available in all five of our constitutions, is through the Arkansas General Assembly. *Forrester v. Martin*, 2011 Ark. 277, at 4, 383 S.W.3d 375, 378. The requirements for this first method

are set forth in article 19, section 22 of the Arkansas Constitution. *Id.*, 383 S.W.3d at 378. The second method, adopted in 1920, is through an initiative-and-referendum power reserved for the people of Arkansas, and those requirements are set forth in amendment 7 of the Arkansas Constitution. *Id.* at 4, 383 S.W.3d at 378–79. This court has stated that amendment 7 does not govern constitutional amendments proposed by the Arkansas General Assembly. *Id.*, 383 S.W.3d at 379.

Article 19, section 22 provides,

> Either branch of the General Assembly, at a regular session thereof, may propose amendments to this Constitution; and if the same be agreed to by a majority of all members elected to each house, such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State, for approval or rejection; and if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this Constitution. But no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately.

Ark. Const. art. 19, § 22.

The article 19, section 22 standard is a different, and less demanding, one than that employed for amendment 7 initiatives. *McCuen*, 303 Ark. 482, 798 S.W.2d 71. This court has rejected the invitation to apply one uniform standard to all proposed amendments. *See Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000); *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000).

B. Act 376

Steele contends that the newly enacted Act 376 now governs our examination of ballot titles and that Act 376 has overruled our holdings in *Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982) (distinguishing the constitutional standards in reviewing ballot titles), and its progeny. Steele asserts that, by enacting Act 376, the Arkansas General Assembly must have intended for ballot titles and popular names to be included on referred constitutional amendments.

Section 12 of Act 376 provides,

> Arkansas Code Title 7, Chapter 9, Subchapter 2, is amended to add an additional section to read as follows:
>
> 7-9-205. Challenges to constitutional amendments proposed by the General Assembly.
>
> If the General Assembly passes a joint resolution proposing an amendment to the Arkansas Constitution, a qualified elector may file an action in a court of competent jurisdiction at any time after the passage of the joint resolution challenging the sufficiency of the joint resolution, including without limitation the:
>
> (1) Text of the proposed amendment;
>
> (2) Ballot title of the proposed amendment; and
>
> (3) Popular name of the proposed amendment.

Act of March 8, 2019, No. 376 § 12, 2019 Ark. Acts 2651.[1]

---

[1] Act 376 is codified at Arkansas Code Annotated section 7-9-205 (Supp. 2019), which provides,

C. Analysis

*1. Act 376*

In the present case, the circuit court ruled,

> [T]here is nothing in Act 376 of 2019 that explicitly overrules prior decisions utilizing Article 19, § 22 of the Arkansas Constitution such as in the *Becker* case, the *Thiel* case[,] or the *Forrester* case. . . . Constitutional amendments referred by the General Assembly are not required to have a ballot title. Act 376 does not change that condition. Act 376 did create a private right of action by which a qualified elector could challenge the sufficiency of constitutional amendments proposed by the General Assembly. However, the case law did not change . . . how the standards are applied. . . . Here, the Court finds that both Issue 2 and Issue 3 comply with the applicable governing procedures of Article 19, [section] 22 of the Arkansas Constitution.

We agree. The plain language of Act 376 allows for a "qualified elector" to "challeng[e] the sufficiency of" a proposed constitutional amendment in one of three ways— by challenging the text, ballot title, or popular name of the proposed constitutional amendment. Nowhere in Act 376 does it expressly state that this court must review a constitutional amendment proposed by the Arkansas General Assembly under amendment

---

> If the General Assembly passes a joint resolution proposing an amendment to the Arkansas Constitution, a qualified elector may file an action in a court of competent jurisdiction at any time after the passage of the joint resolution challenging the sufficiency of the joint resolution, including without limitation the:
>
> > (1) Text of the proposed amendment;
> >
> > (2) Ballot title of the proposed amendment; and
> >
> > (3) Popular name of the proposed amendment.
>
> Ark. Code Ann. § 7-9-205.

7

7. Further, we have stated that the Arkansas General Assembly is presumed to be aware of our decisions. *Cook v. Wausau Underwriters Ins. Co.*, 299 Ark. 520, 772 S.W.2d 614 (1989). We see no reason to depart from our well-established precedent in reviewing a constitutional amendment proposed by the legislature under article 19, section 22 of the Arkansas Constitution. Thus, we hold that article 19, section 22 of the Arkansas Constitution governs the ballot titles of Issue 2 and Issue 3.

*2. Ballot titles of Issue 2 and Issue 3*

Next, Steele argues that the ballot titles of Issue 2 and Issue 3 are misleading and insufficient. Steele contends that both ballot titles fail to inform the voters of their specific proposals and, as a result, the substantial changes made by the two amendments constitute manifest fraud.

This court has stated that article 19, section 22 does not require a ballot title, and any ballot title offered is intended to identify and distinguish the amendment rather than to inform the voter. *Forrester*, 2011 Ark. 277, at 5, 383 S.W.3d at 379. When reviewing a ballot title under article 19, section 22, this court examines (1) whether a ballot title is sufficient to "distinguish and identify" the proposal and (2) whether a ballot title is a "manifest fraud upon the public." *Riviere*, 277 Ark. at 255, 641 S.W.2d at 4. First, when distinguishing and identifying a proposal, a ballot title is sufficient if it distinguishes the proposed amendment from others and is recognizable as referring to the amendment that was previously published in the newspapers. *Forrester*, 2011 Ark. 277, at 5, 383 S.W.3d at 379.

8

Second, a ballot title is held sufficient "unless it is worded in some way so as to constitute a manifest fraud upon the public." *Id.*, 383 S.W.3d at 379. We have defined manifest fraud as (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient information upon which to make the representation; (3) intent to induce action or inaction on the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Id.*, 383 S.W.3d at 379. A plaintiff must overcome an "'enormous hurdle' of the manifest-fraud standard." *Id.* at 4, 383 S.W.3d at 378 (citing *Thiel*, 342 Ark. at 296, 28 S.W.3d at 298).

We turn to the specific question of whether the ballot titles of Issue 2 and Issue 3 are sufficient. The Issue 2 ballot title states that the amendment is known as the "Arkansas Term Limits Amendment," and proposes "amending the term limits applicable to members of the General Assembly." The Issue 3 ballot title states that its amendment will "amend the process for the submission, challenge, and approval of proposed initiated acts, constitutional amendments, and referenda." Here, these two ballot titles sufficiently identify and distinguish the proposed amendments from others on the ballot and in the public. We also agree with the circuit court that the Issue 3 ballot title does not constitute manifest fraud because it "refers to *all* proposed constitutional amendments; those proposed by the public and those proposed by the [Arkansas] General Assembly."[2] Steele simply has not overcome

---

[2]We note that the circuit court did not make specific findings on Issue 2 and manifest fraud. When an argument is not raised below or ruled upon, the issue is not preserved for appellate review. *Worsham v. Bassett*, 2016 Ark. 146, 489 S.W.3d 162.

the "'enormous hurdle' of the manifest-fraud standard" enunciated in *Forrester*, 2011 Ark. 277, at 4, 383 S.W.3d at 378 (citing *Thiel*, 342 Ark. at 296, 28 S.W.3d at 298). Thus, viewing the facts in the complaint in the light most favorable to Steele, we hold that the circuit court properly ruled that Issue 2 and Issue 3 comply with the requirements of article 19, section 22 of the Arkansas Constitution.

### III. *Issue 3*

Lastly, Steele argues that the circuit court erred in ruling that Issue 3 did not violate article 19, section 22 of the Arkansas Constitution. He specifically asserts that Issue 3 is not a single-subject proposal but an initiative containing three separate and disparate constitutional amendments.

This court has held that under article 19, section 22, there is no violation of the separate-issue requirement as long as all of the amendment parts are reasonably germane to each other and to the general subject of the amendment. *Martin v. Humphrey*, 2018 Ark. 295, 558 S.W.3d 370. We have interpreted the word "germane" as it appears in amendment 51 of our constitution to mean "relevant; pertinent" or "having a close relationship." *Id.* at 8, 588 S.W.3d at 376 (citing *Martin v. Haas*, 2018 Ark. 283, 556 S.W.3d 509).

In the case at bar, the circuit court ruled that

> [a]ll of the provisions of Issue 3 relate to ways Arkansas law can be amended. . . . The general subject of Issue 3 is the various procedures in which Arkansas law can be amended: through public initiated acts or amendments, referenda[,] or General Assembly referral. The provisions are relevant to each other and share a close relationship.

10

Based on our review, Issue 3 allows for amendments through public-initiated acts, referenda, or the legislature. It does not violate the same-subject provision because its parts are reasonably germane to each other and to the general subject of the amendment. We conclude that the circuit court properly ruled in this instance. Therefore, we hold that the circuit court properly dismissed Steele's complaint. Accordingly, we affirm.

Affirmed.

Mandate to issue immediately.

WOOD, J., concurs.

HART and WOMACK, JJ., dissent.

**RHONDA K. WOOD, Justice, concurring**. I join the majority opinion but write separately to address the different review standards for constitutional ballot titles. As the majority explains, for decades, we have reviewed ballot titles from the General Assembly for manifest fraud; on the other hand, we have reviewed a ballot title from the people to determine whether the title provided the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law, without any omissions or misleading tendencies.[1]

In 1982,[2] the court explained the Arkansas Constitution required a legislative-referred amendment to run in six separate monthly publications of county newspapers

---

[1]*Stiritz v. Martin*, 2018 Ark. 281, at 4, 556 S.W.3d 523, 527.

[2]*Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982).

before the election.[3] But a citizen-proposed constitutional amendment has no such requirement. The court reasoned the people would be informed of the full legislative-referred amendment before the election by reading the text in the newspaper. The ballot title merely identified the amendment rather than giving voters detailed information to make a decision.[4]

Almost forty years later, we cannot ignore that we live in a much different world. Sadly, the existence, let alone the readership, of county newspapers has greatly diminished. The *Becker* principle's foundation has shifted. Now, a voter's first encounter with the text of any amendment, whether proposed by the legislature or fellow citizens, is in the voting booth. For this reason, all constitutional ballot titles should be fair, cogently explain the proposed changes, and avoid misleading tendencies.

However, our constitution established a different regime for each proposed amendment. This court cannot change the constitution. And absent a conflict with the constitution or a need to return "to the statute's clear language," *stare decisis* demands this court follow its precedent.[5] The General Assembly has an incentive to inform and thus persuade the public to vote for the constitutional amendment it has proposed. If the ballot

---

[3]Ark. Const. art. 19, § 22.

[4]*Becker*, 277 Ark. at 255, 641 S.W.2d at 4.

[5]*Moore v. Moore*, 2016 Ark. 105, at 9, 486 S.W.3d 766, 772.

title still puzzles voters, they retain the power to reject a constitutional amendment they do not understand.

**JOSEPHINE LINKER HART, Justice, dissenting.** Issue 3 should be stricken from the ballot. Article 19, section 22 of the Arkansas Constitution limits the General Assembly to referring to the voters no more than three amendments to the Arkansas Constitution. The purpose for the limitation is expressly stated: "They shall be so submitted as to enable the electors to vote on each amendment separately." Issue 3 itself proposes at least three amendments to the constitution.[1]

First, Issue 3 proposes an amendment to Article 5, section 1, which governs initiated acts and amendments proposed by the people. Second, Issue 3 proposes an amendment to Article 19, section 22, which governs the manner in which the General Assembly is authorized to refer a constitutional amendment to the electors. Third, Issue 3 proposes changes to Amendment 70, section 2, which governs how the General Assembly proposes constitutional amendments changing the salaries of elected state officials. Clearly, by packing these proposed changes to three different parts of the Arkansas Constitution it frustrates rather than enables the electors to vote on each amendment separately, as Article 19, section 22 requires.

Simply calling amendments to disparate sections of the Arkansas Constitution

---

[1]Issue 1 is a proposed amendment to replace Amendment 91 with a permanent tax to fund transportation projects; Issue 2 is a proposed amendment to amend the Arkansas term-limits amendment.

13

"reasonably germane" does not make it so. One need look no further than another section of the majority opinion where it vehemently rejects appellant's argument that ballot titles of amendments submitted by the legislature pursuant to article 19, section 22, be judged by the same standard that the court applies to amendments proposed by the people pursuant to article 5, section 1.

The majority's opinion is not reconcilable with this court's decision in *Martin v. Humphrey*, 2018 Ark. 295, 558 S.W.3d 370, where this court affirmed the circuit court's decision to strike an amendment referred by the legislature when the general subject was tort reform. This court held that the general subjects of "judicial power" or "judiciary and the courts" were insufficient to make the various sections "reasonably germane." The case at bar is even more egregious. One part of Issue 3 is directed at a measure generated by the people. Two other parts affect how the legislature proposes constitutional amendments. All three concern *different* processes for amending the constitution. Yet, the majority affirms the circuit court's finding that these *different* procedures are "reasonably germane" because "[t]he general subject of Issue 3 is the various procedures in which Arkansas law can be amended: through public initiated acts or amendments." That single sentence should provide all the clues necessary to decide that Issue 3 contains disparate proposals. The phrase "various procedures" can only indicate that there is more than one discrete change to the constitution that should be "submitted as to enable the electors to vote on each amendment separately." Ark. Const. art. 19, § 22. I would reverse the circuit court and order Issue 3 stricken from the ballot.

14

I dissent.

**SHAWN A. WOMACK, Justice, dissenting.** Steele brings this action under Arkansas Code Annotated section 7-9-205, which provides a qualified elector a private right of action to challenge the sufficiency of constitutional amendments proposed by the General Assembly in a court of competent jurisdiction. Because Steele challenges the sufficiency of two proposed constitutional amendments, Issue 2 and Issue 3, under amendment 80 to the Arkansas Constitution the Arkansas Supreme Court is the court of competent jurisdiction. The circuit court, therefore, lacked subject-matter jurisdiction, and the appeal should be dismissed. For this reason, I dissent.

Subject-matter jurisdiction is an issue that can and must be raised by this court sua sponte. *James v. Williams*, 372 Ark. 82, 270 S.W.3d 855 (2008). A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Perroni v. Sachar*, 2017 Ark. 59, 513 S.W.3d 239. When the circuit court lacks subject-matter jurisdiction, this court also lacks subject-matter jurisdiction on appeal. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, 403 S.W.3d 559. Circuit courts have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution. *Edwards v. Nelson*, 372 Ark. 300, 275 S.W.3d 158 (2008).

Citing *Berry v. Hall*, 232 Ark. 648, 339 S.W.2d 433 (1960), the majority states that in cases involving a constitutional amendment proposed by the General Assembly, this court's jurisdiction is appellate only. In *Berry*, the court relied on article 7, section 4 of the Arkansas Constitution to conclude we have no original jurisdiction in cases involving legislatively-

15

referred amendments. *Id.* at 651–53, 339 S.W.2d at 435–36. However, this section has since been repealed by amendment 80. *See Weatherford v. State*, 352 Ark. 324, 101 S.W.3d 227 (2003). Amendment 80, section 2(D)(4) provides this court shall have "[o]riginal jurisdiction to determine sufficiency of state initiative and referendum petitions and proposed constitutional amendments."[1] Thus, this court's jurisdiction over Steele's action attacking the sufficiency of Issue 2 and Issue 3 is not appellate, as the majority claims, but rather original under our current constitution and should have been filed directly in this court. Because the circuit court lacked subject-matter jurisdiction over the cause, this court also lacks jurisdiction on appeal. Accordingly, I would dismiss the pending appeal for lack of subject-matter jurisdiction.

I respectfully dissent.

*David A. Couch*, for appellant.

---

[1]The majority also cites to *Forrester v. Daniels*, 2010 Ark. 397, 373 S.W.3d 871, wherein this court held that when considering the phrase "proposed constitutional amendments" in connection with the phrase "to determine sufficiency of," amendment 80 does not expand this court's jurisdiction over cases involving challenges to legislatively-referred amendments. I believe this reading of amendment 80 to be erroneous. Amendment 80 assigns this court original jurisdiction to determine the sufficiency of proposed constitutional amendments, irrespective of whether voters or the legislature refer them. As previously discussed, Steele brings this action under a statute that provides qualified electors an avenue for challenging the sufficiency of legislatively-referred amendments. Steele asked the circuit court and now this court to determine the sufficiency of the ballot titles for Issue 2 and Issue 3 and whether the provisions of Issue 3 were sufficiently germane so as not to run afoul of article 19, section 22 of the Arkansas Constitution. By the plain and unambiguous language of amendment 80, this court retains original jurisdiction over this sufficiency challenge.

*Leslie Rutledge*, Att'y Gen., by: *Michael Mosley*, Ass't Att'y Gen.; and *Brittany Edwards*, Att't Att'y Gen., for appellee.