Cite as 2020 Ark. 392

# SUPREME COURT OF ARKANSAS

No. CV–20–639

| | |
|---|---|
| | **Opinion Delivered:** December 3, 2020 |
| ANDREW KIMBRELL<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CV2020-5656] |
| V. | |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF ARKANSAS | HONORABLE MARY SPENCER MCGOWAN, JUDGE |
| APPELLEE | DISMISSED. |

**KAREN R. BAKER, Associate Justice**

In 2019, the General Assembly referred three proposed amendments to the Arkansas Constitution to the voters of the State of Arkansas for the general election to be held on November 3, 2020. This appeal involves a challenge by appellant, Andrew Kimbrell, a qualified voter, to the ballot title of two of the proposed referred constitutional amendments, Issue 2—"Arkansas Term Limits Amendment"; and Issue 3—"A Constitutional Amendment to Amend the Process for the Submission, Challenge, and Approval of Proposed Initiated Acts, Constitutional Amendments and Referenda." The popular name and ballot title for Issue 2 stated as follows:

> A Constitutional Amendment to Amend the Term Limits Applicable to Members of the General Assembly, to be Known as the "Arkansas Term Limits Amendment."

A Constitutional Amendment to be known as the "Arkansas Term Limits Amendment"; and amending the term limits applicable to members of the General Assembly.

The popular name and ballot title for Issue 3 stated:

A Constitutional Amendment to Amend the Process for the Submission, Challenge, and Approval of Proposed Initiated Acts, Constitutional Amendments, and Referenda.

An Amendment to the Arkansas Constitution to amend the process for the submission, challenge, and approval of proposed initiated acts, constitutional amendments, and referenda.

On October 9, 2020, Kimbrell filed an action in the Pulaski County Circuit Court for writ of mandamus, declaratory and injunctive relief challenging the sufficiency of Issue 2 and Issue 3, seeking a declaration that Issue 2 and Issue 3 were insufficient, and an injunction precluding appellee, John Thurston, as Secretary of State, from placing Issue 2 and Issue 3 on the ballot, and from counting, canvassing, or certifying any ballots for Issue 2 and Issue 3.[1] Further, Kimbrell's action sought review of the standard applied by this court in reviewing ballot titles on amendments referred by the General Assembly, which was established in *Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982). Specifically, Kimbrell alleged that the manifest-fraud standard set forth in *Becker* should no longer apply to proposed amendments referred by the General Assembly because the basis supporting the court's position in *Becker* is no longer applicable. Kimbrell contended that this court's premise that voters were widely informed about the substance of referred amendments through newspaper publications was no longer valid due to the significant decline in

[1]In his motion to expedite, Kimbrell states that "because [Issue 3] was already rejected by the voters [in the November 3, 2020 election,] it has been rendered moot."

2

newspaper circulation and readership in recent years. According to Kimbrell, only 25.6 percent of registered voters would have received a newspaper that included the 2020 public notices. Kimbrell further alleged that *Becker* must be overruled because the legislature now refers amendments almost every election cycle. Kimbrell's theory was that because of these changes, the rationale provided in *Becker* was no longer applicable. In sum, relying on the alleged decline in newspaper circulation, the decline in notoriety surrounding referrals by the General Assembly, and the disinterest in public notices, Kimbrell contended that the courts should now apply either the same standard that applies to voter-initiated amendments or a new standard that is at least more stringent than the manifest-fraud standard. Based on this, Kimbrell alleged that the ballot titles of Issues 2 and 3 were misleading and insufficient because they failed to inform the voters of the substance of the amendments. Kimbrell requested that the circuit court enter an order declaring these Issues insufficient and invalid and enjoining Thurston from counting, canvassing, and/or certifying any ballots or votes cast for them during the November 3 election.

On October 14, 2020, pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, Thurston filed a motion to dismiss. On October 15, we handed down *Steele v. Thurston*, 2020 Ark. 320, \_\_\_ S.W.3d \_\_\_, in which Steele appealed the circuit court's order denying Steele's request to strike two proposed constitutional amendments, Issue 2 and Issue 3, from the general-election ballot on November 3. We affirmed the circuit court's order and specifically rejected Steele's invitation to overrule our precedent pertaining to the review of constitutional amendments proposed by the legislature: "We see no reason to depart from our well-established precedent in reviewing a constitutional amendment

3

proposed by the legislature under article 19, section 22 of the Arkansas Constitution. Thus, we hold that article 19, section 22 of the Arkansas Constitution governs the ballot titles of Issue 2 and Issue 3." *Steele*, 2020 Ark. 320, at 8, ___ S.W.3d at ___. Based on *Steele*, on October 15, 2020, Thurston filed an amended motion to dismiss contending that Kimbrell's action was barred by res judicata, collateral estoppel, and laches and should be dismissed; he also asserted that our decision in *Steele* addressed Kimbrell's claims and bars review. Thurston further claimed that Kimbrell's action should fail on the merits because Issue 2 and Issue 3 comported with our constitutional requirements.

Likewise, on October 15, the circuit court conducted a hearing on the complaint and motion to dismiss. On October 16, Kimbrell responded to Thurston's amended motion to dismiss and asserted that his action was not barred; rather, Kimbrell contended that there had been a change in circumstances warranting a departure from precedent and urged the circuit court to overrule *Becker*. On October 19, Thurston replied to Kimbrell's response and urged the circuit court to grant his motion to dismiss alleging that our decision in *Steele* addressed Kimbrell's claims and that Kimbrell's request to overturn decades of precedent was without merit.

On October 26, the circuit court entered an order finding that *Steele* controlled and granted Thurston's amended motion to dismiss with prejudice; denied Kimbrell's motion for a preliminary injunction; denied Kimbrell's motion for writ of mandamus or declaratory relief; and dismissed the matter with prejudice.

On October 27, Kimbrell filed his notice of appeal in the circuit court, designating the pleadings as the record on appeal and stated that "[he had] not designated any portion

4

of the record requiring transcription services." He further stated that "the Appellant requests that the Court expedite the briefing and consideration of this matter so that it can be decided as soon *after* the election as possible." (Emphasis added.) We note that absent from the record is a motion to stay the circuit court's October 26 order. We also note that on October 29, the transcript of the pleadings was completed by the circuit court clerk.

Thereafter, on November 2 Thurston objected to Kimbrell's "failure to include the transcript of the October 15 hearing as part of the record on appeal. Defendant hereby designates the entirety of the transcript of the October 15 hearing for inclusion in the record." On November 3 the general election occurred.

On November 9, after the election, Kimbrell lodged the record, filed a motion for expedited consideration, and submitted a proposed briefing schedule with briefing to be complete on November 23, 2020. On November 10, we granted expedited briefing and ordered simultaneous briefs due on November 16 at 10:00 a.m. The parties filed timely briefs. From the circuit court's October 26 order, Kimbrell appeals and presents one issue asserting that the circuit court erred in declining to overrule *Becker* and its progeny. We dismiss the appeal.

I. *Standard of Review*

"Because this case involves an amendment proposed by the Arkansas General Assembly, our jurisdiction is appellate only. *See Forrester v. Daniels*, 2010 Ark. 397, 373 S.W.3d 871; *Becker v. McCuen*, 303 Ark. 482, 798 S.W.2d 71 (1990); *Berry v. Hall*, 232 Ark. 648, 339 S.W.2d 433 (1960)." *Steele*, 2020 Ark. 320, at 3, ___ S.W.3d at ___. When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in

the complaint as true and view them in the light most favorable to the plaintiff. *Wade v. Ferguson*, 2009 Ark. 618, at 2, 2009 WL 4723356. "In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id*. When a complaint is dismissed on a question of law, this court conducts a de novo review. *State v. West*, 2014 Ark. 174, 2014 WL 1515898; *Fatpipe, Inc. v. State*, 2012 Ark. 248, 410 S.W.3d 574." *Steele*, 2020 Ark. 320, at 4, ___ S.W.3d at ___. The standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Henson v. Cradduck*, 2020 Ark. 24, 593 S.W.3d 10.

## II. *Law & Analysis*

At issue here is Kimbrell's challenge to Issue 2 and Issue 3. In granting Thurston's amended motion to dismiss, the circuit court found in pertinent part:

> This case is a challenge to Issues 2 and 3 due to their insufficient ballot titles. The Arkansas Supreme Court has adopted a manifest fraud standard regarding ballot titles on amendments referred by the General Assembly to the people. Issue 2 and Issue 3 on the November, 2020 ballot are analyzed pursuant to this standard.

> The Plaintiff urges this Court to adopt a new standard. The crux of this argument is that voters are aware of what they are voting on because the Arkansas Constitution requires an extended publication period of six separate monthly insertions in one newspaper in each county prior to the election. The Supreme Court adopted the manifest fraud standard because they reasoned that the voters were already informed as to the contents of the amendment(s) through the required publication period. However, the Plaintiff argues that "the idea that newspaper circulation alone, which is all that is required by the Constitution, can support a presumption that the voters are informed by the contents of a referred amendment . . . is no longer true." The Plaintiff argues that "voters can no longer be presumed to be informed by newspapers due to the significant decline in newspaper circulation and readership."

The Plaintiff presented statistics and arguments to support his statement that the voters are not informed when "all they have before them is the ballot title." The Plaintiff urges this Court to apply the same standard to all ballot titles. That standard is that the ballot title be "intelligible, honest and impartial."

The Plaintiff, alternatively, asks this Court to adopt a standard that would not allow ballot titles to survive judicial scrutiny if the title misleads or misinforms the voters as to the contents.

Further, the Plaintiff seeks a preliminary injunction alleging that if the votes are counted in the November 2020 election, it would be too late for this Court to address the issue. The Plaintiff argues that this is the irreparable harm and the likelihood of success on the merits is based on the "changes in circumstances." The Plaintiff further argues that the standard was interpreted and applied by the Arkansas Supreme Court and thus, courts can change the standard.

. . . .

The Defendant responded with an Amended Motion to Dismiss in which the State argued that this case, like *Steele v. Thurston*, 2020 Ark. 320, challenges Issue 2 and 3 referred by the General Assembly. This Court ruled in the *Steele* case that proposed constitutional amendments from the General Assembly are reviewed under the Article 19, § 22 standard of review set forth in *Forrester v. Martin*, 2011 Ark. 277; that both Issue 2 and Issue 3 complied with the governing standards under Article 19, § 22 as set forth in *Forrester*, *supra*; and the ballot title of Issue 3 did not constitute manifest fraud. That ruling was affirmed in *Steele v. Thurston*, *supra*. The Supreme Court stated, in that opinion, that "[T]his court has rejected the invitation to apply one uniform standard to all proposed amendments." The Supreme Court then stated "the circuit court properly ruled that Issue 2 and Issue 3 comply with the requirements of article 19, section 22 of the Arkansas Constitution."

This Court finds that the *Steele* case is controlling and that Article 19, § 22 of the Arkansas Constitution defines the standard of review.

. . . .

Here, the Court finds that both Issue 2 and Issue 3 comply with the applicable governing procedures of Article 19, § 22 of the Arkansas Constitution.

Kimbrell contends that the circuit court erred in its findings and urges us to reverse the circuit court. Thurston contends that Kimbrell's appeal is barred by res judicata, collateral estoppel, and laches.

### III. *Mootness*

As a threshold issue, because the election at issue in this case has already occurred, this court must address whether this case is moot. In *Lott v. Langley*, 2013 Ark. 247, at 2–3, we addressed an election challenge and explained,

> As a general rule, the appellate courts of this state will not review issues that are moot because to do so would be to render an advisory opinion. *Allison v. Lee Cnty. Election Comm'n*, 359 Ark. 388, 198 S.W.3d 113 (2004). Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Id.* We have, however, recognized two exceptions to the mootness doctrine. *Id.* The first exception involves issues that are capable of repetition, yet evading review, and the second exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.*

Here, Title 7, "Elections," Chapter 5 "Election Procedure Generally," Subchapter 7 "Returns and Canvass," section 701 "Declaration of results--Certification, delivery, and custody of returns"— Ark. Code Ann. § 7-5-701 (Supp. 2019), provides as follows:

> (a)(1) No earlier than forty-eight (48) hours after the election and no later than the fifteenth calendar day after the election, the county board of election commissioners, from the certificates and ballots received from the several precincts, shall proceed to ascertain, declare, and certify the result of the election to the Secretary of State.

Accordingly, in this case, the votes on Issue 2 must be certified to the Secretary of State by November 18, 2020. Therefore, here, both the election and certification deadlines have occurred.

In *Lott*, Lott filed a petition for writ of mandamus and injunctive relief asserting that she had submitted a petition for nomination for city director and sought an order compelling the circuit court to certify her as a candidate for the position and requested an injunction to prevent the election board from drawing ballot positions and taking any action that would affect her right to be considered as a candidate. We held that Lott's appeal was moot and did not fall within an exception to the mootness doctrine,

> In *Watts v. Searcy County Board of Elections*, 364 Ark. 452, 220 S.W.3d 642 (2005), this court refused to address the merits of an appeal when the election had already been held. The appellants had filed a writ of mandamus in the circuit court to direct the board of elections to place an initiative on the ballot for the upcoming election. In determining that the case was moot, we concluded that the appellants had failed to seek expedited consideration of the case and that the only relief they had requested in their petition was to have the initiative placed on the ballot. Additionally, we noted that appellants had failed to suggest that their appeal fell within an exception to the mootness doctrine, and we held that the issues presented in the appeal did not raise considerations of substantial public interest that might prevent future litigation. *See also Ball v. Phillips Cnty. Election Comm'n*, 364 Ark. 574, 222 S.W.3d 205 (2006). *But see Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006) (holding that election issue was not moot where injunction applied only to special election and the issue could be presented again at the upcoming general election); *Stilley v. Makris*, 343 Ark. 673, 38 S.W.3d 889 (2001) (reaching the issue presented despite a potential mootness issue where three other appeals on the same issue were expected).

*Lott*, 2013 Ark. 247, at 3.

We held that any opinion issued on the merits would be wholly advisory. Because the parties did not seek expedited review, the election had taken place, and Lott's prayer for relief could no longer be granted because the election had occurred, we held that the matter was moot. *Lott*, 2013 Ark. 247, at 2–3.

Similarly, in *Ball v. Phillips County Election Comm'n*, 364 Ark. 574, 577–78, 222 S.W.3d 205, 207 (2006), Ball challenged the eligibility of a school board candidate who was

9

running for a position in the Helena–West Helena School District. We dismissed the appeal as moot, explaining,

> Simply stated, Ball's petition was untimely. The candidates' names were certified on or before August 6, 2004. Ball offers no compelling reason for waiting thirty-eight days to file her petition for writ of mandamus and declaratory judgment to remove Jones' name from the ballot. If Ball had filed her suit within this thirty-eight day period (or, including the eight days following the September 13, 2004, the forty-six day period), there would have been ample time in which to resolve all relevant issues raised by Ball prior to the September 21, 2004 election. Ball was well acquainted with the special procedure required to challenge Jones' alleged ineligibility due to his felony convictions, since she pursued such a suit against Jones in the 2003 school election. Ball's inability to have Jones' name removed from the ballot in the 2004 School District Election was due to her decision to wait until eight days before the election to file her petition; in addition, she was unsuccessful in obtaining an order preventing the Phillips County Election Commission from certifying the returns tallied in this race. In short, this election case is moot.

Further, we held that Ball's appeal did not meet an exception to mootness,

> The issues raised by Ball are not considerations of substantial public interest which, if addressed, would prevent future litigation. *See Allison* [*v. Lee Cty. Election Comm'n*, 359 Ark. 388, 19 S.W.3d 133 (2004)]. While it is true that, in some election cases, we will consider the merits of an appeal after the election has been held, we usually do so when the public interest is involved. [Ball] does not suggest that this case falls within that exception, and we are not persuaded that an exception should be made. Any review of this case would be untimely and constitute an advisory opinion.

*Ball*, 364 Ark. at 578, 222 S.W.3d 205 at 207–08.

Likewise, in *Fite v. Grulkey*, 2011 Ark. 188, we dismissed Fite's appeal as moot where Fite waited until fifteen days after the election to seek expedited review and concluded that any opinion would be purely advisory.

Here, on April 3, 2019, the General Assembly referred proposed constitutional amendments Issue 2 and Issue 3. Thereafter, pursuant to Ark. Code Ann. § 7-5-204 (Repl.

2018), the Secretary of State must have certified Issue 2 and Issue 3 as amendments to the Arkansas Constitution to the county board of election commissioners in each county for inclusion on the ballot by August 20, 2020. Yet Kimbrell did not file suit until October 9, 2020.

The record demonstrates that once litigation commenced, the circuit court acted swiftly on Kimbrell's complaint, holding a hearing and entering an order on October 26, 2020. Kimbrell filed his notice of appeal with the circuit court the following day, October 27, stating Kimbrell "requests that the Court expedite the briefing and consideration of this matter so that it can be decided as soon *after the election* as possible." (Emphasis added.) The record also demonstrates that the court reporter acted promptly, and the record was completed and available to the parties on October 29. Yet Kimbrell did not lodge his appeal with this court until November 9, six days after the election.

Finally, in his motion to expedite, Kimbrell did not request that his appeal be addressed before the certification deadline; instead, Kimbrell sought expedited briefing that would be complete on November 23, 2020, and requested that the court "expedite the briefing and consideration of this matter so that it can be decided as soon *after* the election as possible." (Emphasis added.) Yet, again, pursuant to Ark. Code Ann. § 7-5-701, certification must occur by November 18, 2020. In other words, Kimbrell's own proposed expedited schedule supports the conclusion that the issues presented in this appeal are moot. As Kimbrell posited in the hearing before the circuit court, "[I]f the votes are -- are counted at the November election, then it would be too late for the -- for the Court to address the issue -- at least this election cycle -- for these amendments." Kimbrell's prayer for relief,

both to the circuit court and to this court, seeks application of a stricter standard than manifest fraud to ballot titles referred by the General Assembly and specifically to Issue 2 and Issue 3, which has already been voted on in the November 3 election. However, the amendment was presented to the voters, the voters cast their ballots, the votes have been counted, the amendment was approved, and the deadline for the county boards of election commissioners to certify the election has passed. Ark. Code Ann. § 7-5-701(a)(1). In sum, the record demonstrates that Kimbrell failed to seek a stay of certification from either the circuit court or this court; and we are unaware of a stay or similar action delaying certification. Accordingly, a judgment by this court will have no practical legal effect; therefore, the issue is moot. *See Fite*, 2011 Ark. 188 (dismissing appeal as moot where appellant waited until fifteen days after the election to seek expedited review and any opinion would be purely advisory); *Ball*, 375 Ark. 287, 290 S.W.3d 11 (holding that appeal was moot where appellant failed to act expeditiously in pursuing her petition before the election was held or the election results were certified).

Next, we review the two exceptions to mootness. The first exception—the issue is capable of repetition, yet evading review—is not applicable to this matter. As we discussed above, we recently addressed the nearly identical issue presented in this case in *Steele*, and our opinion was handed down before the election. Therefore, the issue is not capable of repetition yet evading review.

The second exception—the appeal concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation—is not applicable either. Because the issues here are nearly identical to those we already rejected in

12

*Steele*, where we reaffirmed that our manifest-fraud standard applies to legislatively referred amendments, this appeal does not raise considerations of substantial public interest. Here, for the reasons discussed above, there is no practical legal effect remaining if we were to address the merits; therefore, we are not convinced that this matter meets an exception to the mootness doctrine, and we dismiss the appeal.

Dismissed.

Mandate to issue immediately.

HART and Womack, JJ., concur.

KEMP, C.J., and WOOD, J., dissent.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree that this case should be dismissed. I write separately, however, because I believe that the majority has misapplied the mootness doctrine in this expedited election case. In my view, while the *disposition* is correct the reason is not. This case should be dismissed because the circuit court did not have subject-matter jurisdiction. This is the third opportunity in as many months that this court has had to guide litigants in challenges to initiated and referred ballot measures, and I lament that we have not finally seized the opportunity to correct a problem in our jurisprudence.

The Arkansas Constitution vests original jurisdiction in this court "to determine "sufficiency of state initiative and referendum petitions and proposed constitutional amendments." Ark. Const. amend. 80, § 2(D)(4). The wisdom of this textual constitutional provision has been made manifest this fall in three cases: *Arkansas for Healthy Eyes v. Thurston*, 2020 Ark. 275; *Steele v. Thurston*, 2020 Ark. 320, ___ S.W.3d ___; and the case at bar. The

13

circuit court filings in each of these cases accomplished nothing and, more importantly, were doomed to accomplish nothing. First, any circuit court decision involving a challenge to initiative and referendum petitions or proposed constitutional amendments is almost certain to be appealed to this court on an expedited basis. Second, most, if not all, of these challenges involve constitutional or statutory construction, which this court reviews de novo, affording the circuit court's interpretation no deference. *State v. Thomas*, 2014 Ark. 362, 439 S.W.3d 690. Finally, in *Steele* and in the case before us, appellant's argument hinges on overruling this court's decision in *Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982); it is axiomatic that the circuit court does not have the power to overrule a decision of the Arkansas Supreme Court.

When a circuit court lacks jurisdiction, the appellate court likewise lacks jurisdiction. *Clark v. State*, 362 Ark. 545, 210 S.W.3d 59 (2005). Accordingly, the proper disposition of this case should be dismissal for lack of subject-matter jurisdiction.

I concur.

WOMACK, J., joins.

**JOHN DAN KEMP, Chief Justice, dissenting.** Appellant Andrew Kimbrell appeals the Pulaski County Circuit Court's dismissal of his complaint challenging the sufficiency of the ballot titles of Issue 2 and Issue 3—two proposed constitutional amendments referred by the Arkansas General Assembly—on the November 3, 2020 general-election ballot. Because Arkansas voters passed Issue 2 and rejected Issue 3, Kimbrell's arguments on appeal concern only Issue 2. The majority opinion dismisses his appeal as moot because the election has

already occurred. I would affirm the circuit court's order of dismissal rather than dismiss the appeal. For the following reasons, I respectfully dissent.

The following timeline is critical to my analysis. On October 26, 2020, the circuit court entered its order granting appellee Secretary of State's motion to dismiss, and Kimbrell filed his notice of appeal in the circuit court on October 27. The general election occurred on November 3, 2020. Kimbrell tendered a record with this court on November 5. On November 9, he lodged the record and filed a motion to expedite. One day later, on November 10, we granted his motion to expedite and ordered simultaneous briefing. This entire process spanned approximately sixteen days, and now the majority holds that the case is moot because Kimbrell has failed to expedite his appeal.

The majority mistakenly relies on four inapplicable election cases. First, the majority cites *Fite v. Grulkey*, 2011 Ark. 188 (dismissing as moot Fite's appeal about a preelection contest seeking to disqualify him as a candidate for the General Assembly because he filed it after the election had been held, and the votes for him had not been counted), and *Ball v. Phillips County Election Commission*, 364 Ark. 574, 222 S.W.3d 205 (2006) (dismissing as moot an appeal from the denial of a petition for writ of mandamus challenging a candidate's eligibility to run for the school board because Ball waited thirty-eight days after the candidates' names were certified on the ballot to file her petition). But these cases involved preelection contests challenging a candidate's eligibility to remain on the ballot as well as substantial delays in bringing the appeals. A candidate's eligibility for election is not at issue in this case.

15

Next, the majority cites *Lott v. Langley*, 2013 Ark. 247, and *Watts v. Searcy County Board of Elections*, 364 Ark. 452, 220 S.W.3d 642 (2005), to support dismissing the appeal as moot for Kimbrell's failure to expedite, but the parties in these cases never requested expedited consideration of their appeals. In *Lott*, 2013 Ark. 247, we dismissed as moot an appeal from the denial of Lott's petition for writ of mandamus requesting that Langley be compelled to certify her as a candidate for a city-director position on the November 2012 general-election ballot. *Id*. at 2. We held that Lott's prayer for relief could no longer be granted because the parties had not sought expedited consideration, and the election had occurred approximately seven months before the submission of Lott's appeal, thereby rendering the appeal moot. *Id*. at 4. In *Lott*, we relied on the holding in *Watts* that Watts's appeal did not fall under a mootness exception because Watts had not sought expedited consideration, and the election had taken place more than a year before the case was submitted to this court. *Id*. at 454–55, 220 S.W.3d at 644–45. Here, unlike the appellants in *Lott* and *Watts*, Kimbrell requested expedited consideration, which we granted, and a months-long time lapse like those in *Lott* and *Watts* has not occurred.[1] I would hold that Kimbrell's appeal is not moot.

---

[1]While the county board of election commissioners was required to certify the election results to the Secretary on November 18, 2020, pursuant to Arkansas Code Annotated section 7-9-119(b) (Repl. 2018), we have no indication from the existing record that the statewide certification process has been completed. Arkansas Code Annotated section 7-9-119 provides in relevant part,

> (b) An abstract of all votes cast on any measure shall be certified by the county board of election commissioners and delivered or postmarked to the Secretary of State no earlier than forty-eight (48) hours and no later than fifteen (15) calendar days after the election is held.

Further, on the merits, I would affirm the circuit court's ruling that this court's recent holding in *Steele v. Thurston*, 2020 Ark. 320, ___ S.W.3d ___, "is controlling and that [a]rticle 19, [section] 22 of the Arkansas Constitution defines the standard of review." In *Steele*, appellant Steele filed suit against the Secretary of State ("Secretary") seeking an injunction, declaratory judgment, and writ of mandamus to compel the Secretary to strike from the general-election ballot Issue 2 and Issue 3 as amendments to the Arkansas Constitution proposed by the General Assembly. The circuit court granted the Secretary's motion to dismiss Steele's complaint for failure to state a claim on which relief could be granted, and Steele appealed the circuit court's dismissal. On appeal, this court stated that "[w]e see no reason to depart from our well-established precedent in reviewing a constitutional amendment proposed by the legislature under article 19, section 22 of the Arkansas Constitution." *Id.* at 8, ___ S.W.3d at ___. In viewing the facts in the complaint in the light most favorable to Steele, we held that the circuit court properly ruled that Issue

---

(c) It shall be the duty of the Secretary of State to canvass the returns on each measure not later than ten (10) days thereafter and to certify the result to the Governor and to the State Board of Election Commissioners.

(d)(1)(A) The Governor shall thereupon issue a proclamation showing the total number of votes cast and the number cast for and the number cast against each measure and shall declare the measure adopted or rejected, as the facts appear.

(B) If the Governor declares any measure adopted, it shall be in full force and effect thirty (30) days after the election unless otherwise provided in the measure.

Ark. Code Ann. § 7-9-119(b)–(d)(1).

2 and Issue 3 complied with the requirements of article 19, section 22 of the Arkansas Constitution. *Id*. at 10, ___ S.W.3d at ___.

In my view, *Steele* controls here. Relying on *Forrester v. Martin*, 2011 Ark. 277, 383 S.W.3d 375, and *Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982), this court stated in *Steele* that the correct standard to review proposed constitutional amendments from the Arkansas General Assembly involves a two-prong analysis: (1) whether a ballot title is sufficient to distinguish and identify the proposal, and (2) whether a ballot title is a "manifest fraud on the public." *Steele*, 2020 Ark. 320, at 8, ___ S.W.3d at ___. Again, I see no reason to depart from this recent precedent. Thus, I would hold that the circuit court properly granted the Secretary's motion to dismiss Kimbrell's complaint, and I would affirm.

WOOD, J., joins.

*Rose Law Firm*, *a Professional Association*, by: *David S. Mitchell*, *Andrew Rittenhouse*, and *Ryan Smith*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Mosley*, Ass't Att'y Gen.; and *Brittany Edwards*, Ass't Att'y Gen., for appellee.